

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 14, 2013**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 13-32984-BJH** |
| **WILLIAM ROWLAND EDWARDS, JR,** | § | **(Chapter 7)** |
| | § | |
| **Alleged Debtor.** | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

This involuntary Chapter 7 case is before the Court upon a petition filed on June 7, 2013[1]

by Katherine Edwards Dow ("**Dow**"), Kelly R. Carrabba ("**Carrabba**"), and Marcus P. Rogers

("**Rogers**") as the dependent administrator for the probate estate of Mildred Elizabeth Edwards

(the "**M. Edwards Estate**" and, collectively with Dow and Carrabba, the "**Petitioners**"), seeking

---

[1] The Involuntary Petition was amended on June 12, 2013 [Dkt. 6]. Pursuant to the docket entry, the petition was amended "to designate Nature of Business as requested by Clerk." The Court was unable to find a substantive difference between the two Involuntary Petitions.

the entry of an order for relief against William Rowland Edwards, Jr. ("**Edwards**") pursuant to 11 U.S.C. § 303.

On July 9, 2013, Edwards filed a Motion to Dismiss, and Alternatively, Motion for Abstention and Answer [Dkt. 9],[2] contesting the Involuntary Petition on multiple grounds including that: (1) there are an insufficient number of petitioning creditors to support the filing of the Involuntary Petition, (2) the Petitioners' debts are the subject of a bona fide dispute, (3) Edwards is generally paying his debts as they come due, and (4) the Involuntary Petition was filed in bad faith as a litigation tactic.[3] In the event that the Court directs entry of an order for relief, Edwards alternatively requested that the Court suspend all proceedings in the case pursuant to 11 U.S.C. § 305.[4]

A trial on the Involuntary Petition was held on October 18, 2013 (the "**Trial**").[5] At the conclusion of the Trial, the Court requested additional briefing on two issues: (1) whether the Petitioners constitute entities holding three separate claims against Edwards, and (2) whether the record contains sufficient evidence to support a finding that the Petitioners' claims aggregate at least $15,325 more than the value of any lien on property of Edwards securing such claims. By agreement of the parties, the last of the briefs was filed October 24, 2013.

---

[2] A duplicate of this pleading appears at Dkt. 10.

[3] The Trial record, however, contains no persuasive evidence suggesting that the Involuntary Petition was filed in bad faith or as a litigation tactic.

[4] At the conclusion of Trial, the Court stated on the record that it would deny Edwards's alternative request to suspend or dismiss this proceeding pursuant to Section 305, finding that such relief would not better serve the interests of Edwards and his creditors; however, no order denying the alternative relief has yet been entered. Based upon this Court's ruling on the Involuntary Petition, as reflected in this Memorandum Opinion and Order, the Court now finds that Edwards's request for alternative relief is moot. Thus, no order denying Edwards's alternative request for suspension or dismissal will be entered by the Court.

[5] Petitioners' Exhibits ("**Pet. Ex.**") 1-12 were admitted into evidence at Trial. While Edwards attempted to introduce certain exhibits at Trial, the Court sustained the Petitioners' objections [Dkt. 52] due to Edwards's wholesale failure to comply with the Agreed Scheduling Order entered in the case [Dkt. 15], including Edwards's failure to timely file and exchange witness and exhibit lists and copies of exhibits. The Court also excluded portions of Edwards's oral testimony due to his failure to comply with pre-Trial discovery requests.

On October 25, 2013, Rogers, as court-appointed receiver for Cisco Springs Management, LLC ("**Cisco Management**"), the general partner of Cisco Springs LP ("**Cisco Springs**"), filed a Joinder in Involuntary Petition (the "**Joinder**") [Dkt. 62], alleging that Cisco Springs is a creditor of Edwards holding an unsecured, non-contingent claim of at least $229,708.95. *Id.* at ¶ 5. Edwards did not file an objection or otherwise respond to the Joinder.

This contested matter under Bankruptcy Rule 9014 constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O) and is now ripe for ruling. This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On or about February 27, 1999, William Rowland Edwards, Sr. passed away. In accordance with his will, Edwards, Sr.'s estate was divided into separate trusts: the William Rowland Edwards, Jr. trust, the Harriett Edwards Carrabba trust,[6] and the Katherine Edwards Dow trust (individually, a "**Trust**" and, collectively, the "**Trusts**"). Mildred Edwards, the widow of Edwards, Sr., was the primary income beneficiary of the Trusts during her lifetime and also served as the initial trustee of the Trusts. Mildred Edwards resigned as trustee and, in June 2001, Edwards was appointed as trustee of each Trust.

In June 2009, Dow and Carrabba sued Edwards for breach of fiduciary duty and for an accounting in the case styled *Katherine Dow, et al. v. William Rowland Edwards, et al.,* Case No. 09-01881-1, in Probate Court No. 1 of Dallas County, Texas. That litigation was subsequently transferred and consolidated with the probate proceeding of Mildred Edwards, which is pending in Bexar County Probate Court No. 1 (the "**Probate Court**"), Case No. 20110-PC-0827. The Probate Court granted summary judgment in Dow's and Carrabba's favor on July

---

[6] Harriett Carrabba passed away, leaving Carrabba as the beneficiary of the Harriett Edwards Carrabba trust.

25, 2012. The M. Edwards Estate, via Rogers, subsequently filed its own summary judgment motion in connection with its claims against Edwards, which was also granted. The Probate Court entered a Final Judgment in the Petitioners' favor dated March 15, 2013 (the "**Final Judgment**"). Final Judgment [Pet. Ex. 3] at 6. Pursuant to the Final Judgment:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED, that Plaintiffs Katherine Edwards Dow and Kelly Carrabba shall have Final Judgment against and recover from William Rowland Edwards, Jr. the sum of $1,669,924.39.

> Pre-judgment interest in the amount of $288,008.84, calculated as simple interest at the rate of 5% on the above award of $1,669,924.39 in actual damages from July 31, 2009 until January 11, 2013.

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs Katherine Edwards Dow and Kelly Carrabba shall also have Final Judgment against and recover from Defendant Williams Rowland Edwards, Jr. for their attorneys' fees of $307,014.46.

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs Katherine Edwards Dow and Kelly Carrabba shall also have Final Judgment against and recover from Defendant Williams Rowland Edwards, Jr. attorney's fees in the amount of $50,000 in attorneys' fees in the event Defendants pursue an unsuccessful appeal to the Court of Appeals, an additional $25,000 through the petition for review stage at the Texas Supreme Court, and an additional $25,000 through an appeal to the Texas Supreme Court.

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that all of Plaintiff Katherine Edwards Dow and Kelly Carrabba's costs of court in the amount of $18,260.60 in costs expended or incurred in this cause are hereby adjudged against Defendant William Rowland Edwards, Jr.

*Id.* at 4-5. The Final Judgment also awards the M. Edwards Estate $1,201,832, plus pre-judgment interest of $123,311.25, attorneys' fees of $10,000, and amounts payable in the event that Edwards files an unsuccessful appeal of the Final Judgment. *Id.* at 5-6. Further, the Final Judgment expressly states that "[t]his is a final judgment disposing of all parties and all claims in this action and is appealable." *Id.* at 6.[7]

---

[7] Edwards testified at Trial that all amounts awarded to the Petitioners by the Final Judgment remain outstanding and unpaid.

As previously noted, on June 7, 2013, the Petitioners commenced this bankruptcy case by filing an Involuntary Petition against Edwards, which was amended by an Involuntary Petition [Dkt. 6] filed on June 12, 2013. An Agreed Scheduling Order [Dkt. 15] was entered on August 11, 2013, which established various Trial-related filing deadlines, including the deadlines to file and serve witness and exhibit lists, pre-Trial briefs, proposed findings of fact and conclusions of law, and a joint pre-Trial order. The Agreed Scheduling Order also scheduled Trial docket call for October 8, 2013.

Edwards, acting through his attorney, wholly ignored the Agreed Scheduling Order, missing each and every deadline and failing to appear at Trial docket call. Due to Edwards's failure to appear, the Court rescheduled Trial docket call to October 15, 2013 and directed Edwards's counsel to appear. At the reset Trial docket call, the Court once again directed Edwards's counsel to file a pre-Trial brief and proposed findings of fact and conclusions of law by a date certain. Once again, Edwards's counsel missed the new deadline. Although late, Edwards's counsel finally filed proposed findings of fact and conclusions of law [Dkt. 50] and a proposed witness and exhibit list [Dkt. 51]. Petitioners objected to Edwards's witness and exhibit list due to its untimely filing [Dkt. 52]; and the Court sustained the Petitioners' objections at Trial, thereby excluding Edwards's Trial exhibits.

A Joint Pre-Trial Order [Dkt. 56] was filed by the parties and entered by the Court on October 21, 2013. The parties stipulated to the following facts in the Joint Pre-Trial Order:

1. Petitioning Creditors have a final judgment against Alleged Debtor dated March 13 *[sic]*, 2013 (the "Probate Court Judgment"). That judgment is on appeal and the Alleged Debtor has filed his brief in the San Antonio Court of Appeals.

2. The Probate Court Judgment grants Katherine Edwards Dow and Kelly Carrabba $1,669,924.39 in actual damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

**MEMORANDUM OPINION AND ORDER** 5

3. The Probate Court Judgment grants the Estate of Mildred Edwards $1,201,832.00 in actual damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

4. The Probate Court Judgment has not been satisfied.

5. The Probate Court Judgment has not been stayed.

6. The Probate Court Judgment is not subject to a supersedeas bond.

7. Probate Court No. 1, in Bexar County, Texas (the "Probate Court") has authorized Marcus Rogers to act as the representative of the Estate of Mildred Edwards.

8. Alleged Debtor has more than 12 creditors.

Joint Pre-Trial Order [Dkt. 56] at 2.

As noted previously, on October 25, 2013, after the conclusion of Trial and the submission of post-Trial briefs, Rogers, as court-appointed receiver of Cisco Management, the general partner of Cisco Springs, filed his verified Joinder, asserting that:

Marcus Rogers, in his capacity as receiver joins as a petitioning creditor and asserts that as of June 7, 2013, Alleged Debtor was indebted to Cisco Springs LP in the amount of $473,959.95 pursuant to that Promissory Note dated September 17, 2007, executed by Alleged Debtor, payable to the order of Stanley Davidow, such note having been modified by Modification and Extension Agreements dated September 17, 2008 and September 17, 2009. *See* Exhibits A, B. Such note was secured by the property described in the Deed of Trust dated September 17, 2007, and recorded on September 21, 2007 under Clerk's File No. 20070341626 of the Real Property Records of Dallas County, Texas. Cisco Springs LP is the holder of the note and the current beneficiary of the deed of trust. *See* Exhibit B.

The claim of Cisco Springs LP is partially secured by the property known as 3216 Brown St. Cisco is under-secured pursuant to the deed of trust in at least the amount of $229,705.95.

Joinder [Dkt. 62] at ¶¶ 4 – 5.

## II.     LEGAL ANALYSIS OF DISPOSITIVE ISSUES

An involuntary case may be filed against a person[8] by the filing with the bankruptcy court of a petition under chapter 7 or 11 –

> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,325[9] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

11 U.S.C. § 303(b)(1).  If the involuntary petition is contested, then the bankruptcy court must enter relief against a debtor under the chapter under which the petition was filed if "the debtor is generally not paying his debts as they come due unless such debts are the subject of a bona fide dispute as to liability or amount."  *Id.* at § 303(h).  The petitioning creditors must satisfy the requirements of Bankruptcy Code § 303 by a preponderance of the evidence. *In re Moss*, 249 B.R. 411, 418 (Bankr. N.D. Tex. 2000) (citing cases).

Here, the following issues are in dispute, and will be addressed by the Court in turn. First, do the Petitioners hold three claims as required by 11 U.S.C. § 303(b)?  Second, if not, does the joinder by Cisco Springs cure any such deficiency?  Third, whether the Final Judgment is the subject of a bona fide dispute?   Fourth, was Edwards generally paying his debts as they became due?   And, finally, do the Petitioners (and Cisco Springs) hold at least $15,325 in unsecured debt as required by 11 U.S.C. § 303(b)?

### A.     Whether the Petitioners Hold Three Claims As Required by 11 U.S.C. § 303(b)

Edwards contests the Petitioners' individual and collective ability to file the Involuntary Petition by arguing that:  (1) under Texas law and the Bankruptcy Code, the M. Edwards Estate

---

[8] Edwards does not dispute that he is eligible to be a debtor under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 303(a).

[9] Dollar amount as adjusted by the Judicial Conference of the United States. *See* 11 U.S.C. § 104.

**MEMORANDUM OPINION AND ORDER**                                                                 **7**

is not eligible to serve as a petitioning creditor, and (2) entry of the Final Judgment converted the Dow and Carrabba claims into a single, indivisible claim; and thus, Dow and Carrabba are collectively a single creditor. The Court will address these arguments in turn.

i.     *The M. Edwards Estate as Petitioning Creditor.*

Citing to Texas Probate Code § 37, Edwards argues that the M. Edwards Estate cannot be a petitioning creditor because, under Texas law, it cannot hold a claim. Probate Code § 37 provides:

> Sec. 37. PASSAGE OF TITLE UPON INTESTACY AND UNDER A WILL.
> When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law, and subject to the payment of court-ordered child support payments that are delinquent on the date of the person's death; and whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exception aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate and the delinquent child support payments; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with the law.

Tex. Prob. Code § 37. According to Edwards, the award set forth in the Final Judgment passed from the M. Edwards Estate and vested in its beneficiaries, who are the true holders of the claim. Edwards further argues that, pursuant to *Armes v. Thompson*, 222 S.W.3d 79 (Tex. App. – Eastland 2006), an estate may not be a party to a lawsuit and may not, by implication, be an involuntary petitioner.

Like the Petitioners, this Court does not find Edwards's arguments persuasive. Edwards appears to base his argument upon the third signature block on page two of the Involuntary Petition, which contains Rogers's signature with the words "Estate of Mildred Elizabeth

Edwards" typed below it. Involuntary Petition [Dkt. 6] at 2. Immediately below the signature block, in the area designated for the contact information of the "Individual Signing in Representative Capacity," are the words "Marcus P. Rogers, D.A." *Id.* The letters "D.A." clearly refer to Rogers's role as dependent administrator of the M. Edwards Estate. Although the Involuntary Petition describes one of the Petitioners as "Est. of Mildred Edwards," the description does not change the fact that the Involuntary Petition was signed by Rogers in his capacity as dependent administrator for her estate. This finding is bolstered by various documents filed in this case on behalf of the M. Edwards Estate that describe Petitioner as "the Estate of Mildred Elizabeth Edwards, through its authorized representative Marcus P. Rogers, D.A." *See, e.g.,* Joint Pre-Conference Statement [Dkt. 12] at 1; Agreed Scheduling Order [Dkt. 15] at 2.

Also, as expressly noted in the *Armes* case cited by Edwards:

> Common examples of parties with standing, but not capacity, are minors and decedent's estates. Minors may not sue or be sued but must appear in court through a legal guardian, a next friend, or guardian ad litem. *See Sax v. Votteler,* 648 S.W.2d 661, 666–67 (Tex. 1983) (minors have no right to bring an action on their own behalf unless their disability has been removed). Similarly, a decedent's estate is not a legal entity and may not properly sue or be sued as such. *Price v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex. 1975). In general, only the estate's representative has the capacity to act on behalf of the estate. *Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex. 1971).

*Armes,* 222 S.W.3d at 82. As recognized by the *Armes* court, while the M. Edwards Estate may not be a legal entity that can properly sue, Rogers, as the dependent administrator of her estate, can.

Further, Edwards does not take into consideration that full title to a bequeathed asset does not pass to a beneficiary until the asset has been fully administered by the estate. As explained in *In re O'Quinn*, 355 S.W.3d 857 (Tex. App. – Houston [1st Dist.] 2011):

> Under Probate Code section 37, "[w]hen a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will ... shall vest immediately in the devisees or legatees of such estate...." Tex. Prob. Code Ann. § 37 (Vernon 2003); *see also Nowlin v. Frost Nat'l Bank*, 908 S.W.2d 283, 288 (Tex. App. -- Houston [1st Dist.] 1995, no writ) ("[U]nder the Probate Code, title to property vests in the beneficiary immediately upon a testator's death."). During the administration of the estate, the testator's executor holds legal title to estate assets and retains the right of possession, but the devisees hold the equitable title to the assets. *See* Tex. Prob. Code Ann. § 37; *see also Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 584 (Tex. 1993) ("[I]t is true that the heirs hold equitable title to estate property")....

*Id.* at 863. As such, the beneficiaries of the M. Edwards Estate may hold an equitable interest in the amounts awarded by the Final Judgment, but the Final Judgment itself is expressly in favor of "Intervenor," which is defined in the judgment as "Marcus P. Rogers, in his capacity as Dependent Administrator of the Estate of Mildred Elizabeth Thomas Edwards." Final Judgment [Pet. Ex. 3] at 2. As such, the Court concludes that the Involuntary Petition was property filed by Rogers, in his capacity as the dependent administrator of the M. Edwards Estate.

Finally, as correctly argued by Rogers, the Bankruptcy Code expressly contemplates that an estate may serve as a petitioning creditor. *See* 11 U.S.C. §§ 303(b) ("An involuntary case against a person is commenced by the filing … of a petition … by three or more entities…."); 101(15) ("The term 'entity' includes person, estate, trust, governmental unit and the United States Trustee.").

For the foregoing reasons, the Court concludes that the M. Edwards Estate, via Rogers as its dependent administrator, may serve as a petitioning creditor under the Bankruptcy Code.

ii.    *Dow and Carrabba as Petitioning Creditors.*

Edwards next argues that Dow's and Carrabba's separate claims against him were reduced to a single, indivisible judgment; and thus, Dow and Carrabba now hold a single claim. Edwards's sole cited authority for this argument is *In re Forster*, 465 B.R. 97 (Bankr. W.D. Va. 2012). In *Forster*, an alleged debtor moved to dismiss an involuntary case on the grounds that

**MEMORANDUM OPINION AND ORDER**                                                    **10**

petitioning husband and wife held a single claim and, thus, the involuntary petition was not filed by the requisite number of petitioning creditors. *Id.* at 97-98.

According to Dow and Carrabba, *Forster* is distinguishable on its face. *Forster* involved spouses who had obtained a judgment for sums owing on a promissory note that was payable to the order of husband "and" wife, and not to one spouse or the other. *Id.* Under Virginia law, such a note could only be negotiated, discharged, or enforced by both spouses. *Id.* at 100. Because their right to payment arose from the promissory note, the spouses could only enforce those rights by obtaining a joint judgment. *Id.*

Moreover, Dow and Carrabba argue that where a final judgment constitutes an award on legally separate claims, each claimant constitutes a separate creditor. Dow and Carrabba point out that: (1) the Petitioners' claims against Edwards relate to his mismanagement of three separate Trusts, (2) each Trust was to benefit the M. Edwards Estate as an income beneficiary, and two of which were to provide the eventual corpus to Dow and Carrabba individually, and (3) each Trust held a separate account from which misappropriated funds were withdrawn. Dow and Carrabba also point to the Stipulation of Evidence [Pet. Ex. 5] that was executed by Edwards as part of a related criminal proceeding against him, which sets forth, in detail, amounts misappropriated by Edwards from each Trust. Because of this, Dow and Carrabba argue that this Court should look behind the Final Judgment and find that it represents distinct claims held by each Petitioner.

In support of their argument, Dow and Carrabba cite to Texas case law for the general proposition that a judgment need not allocate the relief awarded among plaintiffs. *See Bonham State Bank v. Chaparral Trailers*, 1998 WL 78955 (Tex. App.—Dallas Feb. 20, 1998) (unpublished) (no error to award sum jointly to two plaintiffs); *Crystal City Ind. Sch. Dist. v.*

*Wagner*, 605 S.W.2d 743, 747 (Tex. App.—San Antonio 1980) (holding that a judgment need not identify the parties and allocate relief among them where they can be identified from the record). Dow and Carrabba then primarily rely upon two cases that have held that the three-creditor, three claim requirement of Section 303(b) can be satisfied by parties to a single judgment that awards a single, lump sum. *See In re Mid-Am. Indus., Inc.,* 236 B.R. 640, 645 (Bankr. N.D. Ill. 1999); *In re Richard A. Turner Co., Inc.,* 209 B.R. 177, 179 (Bankr. D. Mass. 1997).

*Mid-America* involved three separate trust funds to which debtor/employer Mid-America was obligated to contribute pursuant to the terms of a collective bargaining agreement. 236 B.R. at 642. The three funds coordinated their efforts against delinquent contributors through a collections committee in order to conserve resources and avoid duplication of costs. *Id.* Although the funds filed consolidated causes of action, the collections committee's policy and its direction to counsel was that none of the funds were to receive amounts other than in accordance than those provided for under its respective trust agreement. *Id.*

In 1995, the funds filed a one-count complaint against Mid-America for its failure to make trust fund payments (the "**1995 Complaint**"). *Id.* at 642-43. The 1995 Complaint did not segregate the debt due to each fund and, instead, sought a single recovery for all plaintiffs. *Id.* The court granted summary judgment in favor of the funds and entered a judgment that awarded a single amount in favor of all the plaintiffs. *Id.* at 643. Neither the motion for summary judgment nor the 1995 Complaint alleged individual amounts owed to each fund, and it was not possible to tell from the various pleadings what amounts were, in fact, owed to each fund. *Id.*

In June 1996, the same plaintiffs brought a second complaint against Mid-America for unpaid contributions for a subsequent period (the "**1996 Complaint**"). *Id.* at 643. As before, the

1996 Complaint was captioned with the name of the three funds as plaintiffs and failed to differentiate the nature of the separate claims or the amounts sought by each plaintiff. *Id.* The 1996 Complaint did, however, attach two exhibits that provided a formula for breaking down the claims between the funds. *Id.* A single judgment was entered on the 1996 Complaint in favor of plaintiffs. *Id.*

On March 2, 1998, the funds initiated an involuntary proceeding against Mid-America. *Id.* at 641. The bankruptcy court found that the three funds were legally separate entities -- each administered separately with separate books, taxpayer identification numbers, and trustees. *Id.* at 644. Accordingly, the only issue was whether the three funds held joint or separate claims under the two judgments. The *Mid-America* court noted that "[s]everal courts have held that joint holders of an obligation are counted as one creditor." *Id.* at 644 (*citing In re McMeekin*, 16 B.R. 805, 809 (Bankr. D. Mass. 1982) (looking to Massachusetts law, which states that a promissory note made payable to two or more individuals is enforceable only by all of them); *In re Averil, Inc.*, 33 B.R. 562, 563 (Bankr. S.D. Fla. 1983) (concluding joint holders of promissory note constituted single creditor); *In re T.P. Herndon and Co.,* 87 B.R. 204, 206 (Bankr. M.D. Fla. 1988) (finding because promissory note was made payable to single entity, a probate estate, petitioning creditors held single right to payment constituting only one claim for purposes of § 303(b) even though note had been assigned to heirs); *In re Atwood*, 124 B.R. 402, 409 (S.D. Ga. 1991) (affirming, without significant analysis, unpublished bankruptcy decision holding joint holders of judgment constitute single creditor for purposes of § 303(b)). Noting further that nearly all of these cases involved joint holders of a single promissory note, the *Mid-America* court then found that the facts before it more closely resembled those in *In re Richard A. Turner Co., Inc.*, 209 B.R. 177 (Bankr. D. Mass. 1997). *Id.*

The debtor in *Turner* was obligated under a collective bargaining agreement to pay three separate funds.  *Turner*, 209 B.R. at 177.  The *Turner* court entered default judgment in favor of the funds in a lump sum, and the funds subsequently filed an involuntary petition.  *Id.* at 177-78. The alleged debtor filed an answer to the involuntary petition asserting that the funds held a single claim and the petition should therefore be dismissed.  *Id.* at 178.  The *Turner* court distinguished its facts from those in the promissory note cases, finding:

> In contrast, the collective agreement at issue here contains three separate provisions creating separate obligations for different sums to each of the Petitioning Creditors.  Therefore although there is only one collective bargaining agreement, the agreement itself creates three distinct and independent obligations. Consequently, each Petitioning Creditor is a holder of a claim for the amount it is owed under the collative bargaining agreement.

*Id.* at 179 (citations omitted).  The *Turner* court further noted that, in the joint payee cases, the creditors held undivided interests in promissory notes.  *Id.* at 179.  "But in the instant case, the Petitioning Creditors held separate claims, thus the judgment is easily divisible."  *Id.*

Finding the above reasoning in *Turner* persuasive, the *Mid-America* court found that the collective bargaining agreement in its case also contained separate provisions creating separate obligations to the various funds:

> Thus, each of the Petitioning Creditors holds a unique claim for the amount it is owed under the CBA.  The presence of a single judgment recognizing these obligations does not alter the result.  The *Turner* decision found that the judgment was easily divisible, whereas in the joint payee cases …, the creditors held undivided interest in the promissory notes.

*Id.* at 645.  According to the *Mid-America* court, the 1996 Complaint and its attached exhibits did present separate claims because the exhibits permitted the division of the single judgment among the three Petitioning Creditors, *id.* at 646, while the claims set forth in the 1995 Complaint and related judgment, however, were not "easily divisible."  *Id.*  Because the judgment underlying the 1996 Complaint could be divided among the three funds based upon the

exhibits attached to that complaint; the three-creditor, three claim requirement of Section 303(b) was satisfied, making the entry of an order for relief against Mid-America appropriate.

This Court finds the reasoning of the *Turner* and *Mid-America* courts persuasive. In short, if a judgment can be easily divided between the claimants who hold it jointly, it should be so divided for purposes of counting petitioning creditors under Bankruptcy Code § 303(b).

Thus, consistent with the reasoning and holdings of the *Turner* and *Mid-America* courts, this Court concludes that it may look behind the Final Judgment to determine whether it is "easily divisible" between the claims of Dow and Carrabba. In an attempt to persuade the Court that the Final Judgment is "easily divisible," during closing argument counsel for Dow and Carrabba walked the Court through the terms of a Stipulation of Evidence [Pet. Ex. 5] entered in a criminal proceeding against Edwards relating to his misappropriation of money from the Trusts and explained how the amounts Edwards admitted to misappropriating from each Trust there correlated to the damages awarded by the Probate Court in the Final Judgment (with slight variances).

While a laudable effort by counsel to demonstrate how the Final Judgment might be divided between the separate claims of Dow and Carrabba, that effort fails here because there is no evidence in the Trial record that the Stipulation of Evidence was part of the summary judgment evidence presented to the Probate Court in connection with Dow's and Carrabba's summary judgment motion or that the Probate Court came to its judgment amount by reference to the Stipulation of Evidence. In fact, the variances, while minor, suggest that it didn't. And, while this Court is amenable to looking behind the Final Judgment to determine whether Dow and Carrabba hold separate claims and the amount of those claims, there is no legal authority that

supports looking behind the judgment to documents filed in a separate legal proceeding to do so.[10]

Based upon the Trial record, this Court is unable to divide the Final Judgment that was entered in favor of Dow and Carrabba jointly. As such, the Court concludes that the Final Judgment is a single, indivisible judgment that represents a single claim jointly held by Dow and Carrabba.

---

[10] In their Post-Trial Brief, the Petitioners alternatively ask this Court to grant them 30 days to obtain a judgment from the Probate Court apportioning the damages between Dow and Carrabba. Post-Trial Brief [Dkt. 59] at ¶ 13. While no formal motion to reopen the evidence has been filed to date, that is, in essence, what the Petitioners are asking for in their brief – *i.e.*, the Petitioners want the Court to reopen the evidence at Trial to permit the introduction of evidence they do not yet have but hope to obtain from the Probate Court. This Court will consider this informal request as a motion to reopen the Trial evidence.

When deciding whether to reopen an evidentiary record to allow additional evidence, courts are to consider the following, non-exhaustive, factors: (1) the importance of the probative value of the additional evidence, (2) the reason the moving party failed to submit the evidence earlier, and (3) the potential prejudice to the non-moving party if the record is reopened. *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996). Trial courts, as a rule, act within their discretion in determining whether to reopen the record. *Id.* A court's decision to reopen a case "will not be disturbed in the absence of a showing that it has worked an injustice." *Id.*; *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000).

Here, the apportionment of the Final Judgment is critical to the Petitioners' case for the reasons explained in the body of this Memorandum Opinion and Order. However, there is no reason why such an apportionment could not have been obtained from the Probate Court prior to the Trial if Dow and Carrabba are entitled to one as they now assert. Edwards clearly raised this issue in his answer filed on July 9, 2013 and the parties' Agreed Scheduling Order (entered on August 11, 2013) set Trial docket call on the Involuntary Petition for October 8, 2013. The Petitioners had more than 90 days after receiving Edwards's answer to gather the evidence they needed to demonstrate that they satisfied the three-creditor, three-claim requirement of Section 303(b). The Petitioners announced ready for Trial and presented their evidence during the Trial. During closing arguments following the close of the evidence, the Court's concerns regarding whether the Petitioners had carried their burden of proof on this issue became apparent. The Petitioners asked for, and the Court gave them, the opportunity to address this legal issue further in a post-trial brief. The Court has considered those legal arguments carefully.

However, there is simply no reason to give the Petitioners another opportunity to cure the evidentiary shortcomings in their Trial record at this late date. Like all other litigants, the Petitioners either carried their burden of proof at Trial or they didn't. No doubt, all plaintiffs who come to realize that their evidentiary record may be lacking would like such an opportunity once the flaws in their evidence become apparent to them after the evidence is closed. Such is not the way of our legal system; particularly where, as here, the issue was clearly identified in Edwards's answer and the Petitioners had ample opportunity to address it prior to the commencement of Trial. To reopen the evidence under these facts would set a most unfortunate precedent, which the Court declines to do.

For these reasons, this Court will deny the Petitioners' implicit motion to reopen the evidence to cure the evidentiary shortcoming in their Trial record.

**MEMORANDUM OPINION AND ORDER** 16

**B.      Whether Cisco Springs's Joinder Corrects the Deficiency in Number of Petitioning Creditors.**

In its verified Joinder, Cisco Springs alleges that it is the holder of a note initially executed by Edwards in favor of Stanley Davidow (the "**Davidow Note**") [Pet. Ex. 9] and that it is the current beneficiary under the related deed of trust.  Joinder [Dkt. 62] at ¶ 4.  Because the Joinder was verified by Rogers, and Edwards failed to respond or otherwise contest the Joinder, the Court will accept the statements contained therein as competent evidence that Cisco Springs is the holder of the Davidow Note and is owed $473,959.95 pursuant to that note.

At Trial, however, Dow and Carrabba's counsel elicited uncontradicted testimony from Edwards that Cisco Management (not Cisco Springs) purchased the Davidow Note after the underlying collateral was posted for foreclosure.  Edwards's testimony at Trial is corroborated by a list of creditors he filed in accordance with Bankruptcy Rule 1003(b) [Pet. Ex. 8], which was attached to the parties' Joint Pre-Conference Statement and lists a debt owing to Cisco Management in the amount of $300,000 (the original principal amount of the Davidow Note) [Pet. Ex. 9].

So, the Petitioners have themselves elicited evidence establishing that Cisco Management holds the Davidow Note and related security documents, which is directly contradicted by the post-Trial Joinder establishing that Cisco Springs holds the Davidow Note and related security documents.  As such, this Court is unable to determine which Cisco entity holds the Davidow Note and could be a proper party to join in the Involuntary Petition.  Obviously, the best evidence of which entity actually holds the Davidow Note and related security documents would be the transfer documents themselves, which were neither admitted into evidence at the Trial nor attached to the Joinder.

Based upon the inconsistent record before it, this Court is unable to find, by a preponderance of the evidence, that Cisco Springs holds an unsecured claim against Edwards such that it is eligible to join the Involuntary Petition pursuant to 11 U.S.C. § 303(c). Given the stipulation in the Joint Pre-Trial Order that Edwards has more than 12 creditors, the Involuntary Petition must be dismissed because it has not been brought by three eligible petitioning creditors. However, to facilitate appellate review of this Memorandum Opinion and Order, the Court will proceed to address the remaining issues in dispute between the parties.

### C. Whether the Final Judgment is the Subject of a Bona Fide Dispute.

Edwards argues, without citation to legal authority, that the Final Judgment is: (1) subject to a bona fide dispute because it is under appeal, and (2) not a final order because, prejudgment, the Probate Court entered an order establishing a procedure to address the sale of certain real property related to the claims underlying the judgment. The Petitioners, on the other hand, cite to, among other cases, *In re Smith*, 437 B.R. 817 (Bankr. N.D. Tex. 2010), for the proposition that there can be no bona fide dispute as to the validity of a debt that is established by an unstayed final judgment.

The Petitioners bear the burden of proof to establish a prima facie case that no bona fide dispute exists with respect to their claims. *See In re Sims*, 994 F.2d 210, 220-21 (5th Cir. 1993). Once met, the burden then shifts to Edwards to present evidence demonstrating that a bona fide dispute exists. *Id.* The Bankruptcy Code does not define "bona fide dispute;" however, the Fifth Circuit has held that a debt is the subject of a bona fide dispute when "there is an objective basis for either factual or legal dispute as to the validity of the debt." *Id.* "Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." *Id.* at 221.

The majority of decisions analyzing this issue have found that final judgments from state courts that have not been stayed on appeal are not subject to bona fide dispute. *See Smith*, 415 B.R. at 229-230; *In re AMC Investors, LLC,* 406 B.R. 478, 484 (Bankr. D. Del. 2009) (*citing In re Norris,* 114 F.3d 1182, at *5 (5th Cir. 1997) (*per curiam*) (unpublished)); *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007); *In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005); *In re Everett*, 178 B.R. 132, 140 (Bankr. N.D. Ohio 1994); *In re Smith*, 123 B.R. 423, 425 (Bankr. M.D. Fla. 1990); *In re Raymark Indus.*, 99 B.R. 298, 300 (Bankr. E.D. Pa. 1989); *In re Drexler*, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986). In an unpublished decision, the Fifth Circuit has also held that a final judgment that has not been stayed is not subject to a bona fide dispute for purposes of Bankruptcy Code §§ 303(b)(1) and 303(h)(1). *In re Norris*, 114 F.3d 1182 (5th Cir. 1997) (*per curium*) (unpublished). Citing the objective test in *Sims*, the Fifth Circuit in *Norris* stated that "[t]o hold otherwise would require the bankruptcy court to review the state court judgment in order to predict [the alleged debtor's] chance of success on appeal (which would be particularly troubling in that a state court judgment is at issue), and would undermine the objective standard adopted in *Sims*." *Id.* at *5.

By introducing the Final Judgment into evidence, this Court concludes that the Petitioners have met their burden of proof on this point. Because Edwards submitted no evidence to the contrary, this Court concludes that the Petitioners' claims, as reflected in the Final Judgment, are not the subject of a bona fide dispute.

Further, the Court does not find persuasive Edwards's argument that the Probate Court's Order Setting Procedures to Sell Properties (the "**Sale Procedures Order**"),[11] which allegedly predated the Final Judgment, somehow makes the Final Judgment an interlocutory order.

---

[11] The Court notes that the Sale Procedures Order was not admitted into evidence at the Trial.

**MEMORANDUM OPINION AND ORDER** 19

Notably, the Final Judgment specifically states that it "is a final judgment disposing of all parties and all claims in this action and is appealable." Final Judgment [Pet. Ex. 3] at 6. Indeed, Edwards appealed the Final Judgment, contrary to his argument to this Court that the judgment is not final. Joint Pre-Trial Order [Dkt. 56] at 2.

For these reasons, this Court concludes that the Final Judgment is not the subject of a bona fide dispute.

### D.    Whether Edwards was Generally Paying His Debts as They Came Due.

Bankruptcy Code § 303(h) requires that the Court consider both the amount of the debt not being paid and the number of creditors not being paid in determining whether Edwards was generally paying his debts as they became due. *Smith*, 415 B.R. at 232 (*citing In re Harman*, 243 B.R. 671, 675 (Bankr. N.D. Tex. 1999)). Thus, Edwards may not be "generally" paying his debts as they come due when he is not paying one hundred percent of his debts to only one creditor, or paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts. *See Moss,* 249 B.R. at 422.

Specifically, when determining whether Edwards is generally not paying his debts as they come due, this Court must look to four factors: (1) the number of unpaid claims, (2) the amount of such claims, (3) the materiality of the non-payments, and (4) Edwards's overall conduct in his financial affairs. *Id.* Further, postpetition payment of debts that were due as of the petition date may not be considered by the Court. *See Sims*, 994 F.2d at 222 (*citing In re West Side Community Hospital, Inc.*, 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990) ("It is fundamental that the determination of whether the debtor is generally paying such debtor's debts as such debts become due must be made as of the date of filing the petition.")); *see also Norris*, 114 F.3d at *6 ("Accordingly, post-petition payments of debts that were due as of the filing date may not be

considered; nor do we consider debt which have not then become due."). An analysis of each of these factors demonstrates that Edwards was generally not paying his debts as they came due on the date the Involuntary Petition was filed.

As an initial matter, this Court again observes that Edwards's wholesale failure to comply with the Agreed Scheduling Order resulted in this Court's oral ruling that prevented him from introducing any documentary evidence at Trial. Because of this, the only documents before the Court are those admitted by the Petitioners as Exhibits 1 through 12. With a few minor exceptions noted on the record, Petitioners' Exhibits 1-A through 1-S, 2, and 3 detail debts due and owing by Edwards on the Involuntary Petition date. Further, at Trial, the Petitioners adduced persuasive testimony from witnesses, including Edwards, that Edwards was generally not paying his debts as they came due. Specifically, the Petitioners established that as of the Involuntary Petition date the following debts, among others, were due but remained unpaid: (1) 2010, 2011, and 2012 taxes on real property Edwards owns located at 6502 Trammell Drive; (2) 2010, 2011, and 2012 taxes on real property Edwards owns located at 2701 Hood Street; (3) 2010, 2011, and 2012 taxes on real property Edwards owns located at 3614 Brown Street;[12] and (4) 2011 taxes on mineral interests Edwards owns in Sherman County, Texas. The parties have also stipulated that Edwards has not paid any amounts due under the Final Judgment.

At Trial, Edwards testified that he was, in fact, current on the small, recurring bills that were referenced in the Petitioners' exhibits, such as utility bills, phone bills, and his auto loan.

---

[12] Although Edwards testified that he believes that he owns the Brown and Hood Street properties as an "undisclosed nominee" for the various Trusts, the Stipulation of Evidence [Pet. Ex. 5] clearly states otherwise. Indeed, in the Stipulation of Evidence, Edwards states: "I judicially stipulate to the following facts and agree that these facts are true and correct and constitute the evidence in this case." Stipulation of Evidence [Pet. Ex. 5] at 1. Further, "Defendant [Edwards] entered into both the Hood and Brown Street loans in his individual name and made the notes in his individual name and signs [sic] documents purporting to claim it as his personal property." *Id.* at 3. As such, Edwards is judicially estopped from taking a contrary position with this Court. *See Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.").

However, Edwards failed to provide any documentary evidence showing that such bills had, in fact, been paid. This Court finds Edwards's testimony on this point to be incomplete and, at best, self-serving. Edwards further testified, again with no supporting documents, that many of the specified debts were paid postpetition. Of course, the fact that these debts may have been paid postpetition cannot be considered in deciding whether Edwards was generally paying his debts as they became due on the Involuntary Petition date. *Sims*, 994 F.2d at 222.

The evidence at Trial clearly showed that as of the Involuntary Petition date, several million dollars of debt was due, but unpaid. Although Edwards may have selectively paid some of his small, recurring debts, he failed to pay his larger, material debts when due.

For the foregoing reasons, this Court finds that Edwards was generally not paying his debts as they came due in accordance with 11 U.S.C. § 303(h).

### E. Whether Petitioners Hold at least $15,325 in Unsecured Debt as Required by 11 U.S.C. § 303(b).

Pursuant to Bankruptcy Code § 303(b)(1), the Petitioners' claims must "aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims…." 11 U.S.C. § 303(b)(1). In their Post-Trial Brief, the Petitioners argue that Edwards waived his right to contest that the Petitioners hold less than the statutorily required amount of general unsecured debt by not raising it prior to, or during, Trial.[13] Specifically, the Petitioners rely on in *In re Moss*, 249 B.R. 411 (Bankr. N.D. Tex. 2000), in which this Court held that:

> Although Moss failed to identify this issue: (i) in her Motion to Dismiss or Transfer, (ii) in the Joint Pre–Conference Statement filed on April 7, 2000, or (iii) at the pretrial conference held with the Court, Moss contended at trial that the Petitioning Creditors did not hold unsecured claims aggregating $10,775.00.

---

[13] Alternatively, the Petitioners argue that Edwards testified at Trial regarding his assets and liabilities, which is sufficient to prove that the Petitioners have met the statutory dollar threshold. Because the Court concludes that Edwards waived his right to raise this issue, it is not necessary to address the Petitioners' alternative argument.

The Court finds that Moss waived her right to raise this issue by not identifying it timely. *See Valley Ranch Dev. Co., Ltd. v. F.D.I.C.,* 960 F.2d 550, 554 (5th Cir.1992) (holding that the pre-trial order controls the scope of the trial and that claims or issues omitted from the pre-trial order are waived)*; see also Marschand v. Norfolk & Western Ry. Co.*, 81 F.3d 714, 716 (7th Cir.1996); *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1195 (1st Cir.1995), *cert. denied*, 517 U.S. 1136; *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th Cir.1995).

*Id.* at 421.

Additional background regarding the Federal Rules of Bankruptcy Procedure is helpful to fully elaborate upon the issue of waiver in the context of a contested involuntary proceeding. The failure to timely controvert an involuntary petition makes entry of an order for relief mandatory. 11 U.S.C. § 303(h) ("If a petition is not timely controverted, the court shall order relief against the debtor in an involuntary case …."). To controvert an involuntary petition, an alleged debtor can either file an answer or make a motion authorized by Federal Rule of Civil Procedure 12. Fed. R. Bankr. P. 1011(b) ("Defenses and objection to the petition shall be presented in the manner prescribed by Rule 12 F.R.Civ.P. …."). If an alleged debtor chooses to answer the involuntary petition, the answer should be in conformity with Federal Rule of Civil Procedure 8, and should set forth all of the alleged debtor's affirmative defenses. Fed. R. Bankr. P. 7008; *see also* Fed. R. Bankr. P. 1018 (incorporating Federal Bankruptcy Rule 7008 into contested involuntary proceedings). Averments in the involuntary petition that are not denied are deemed to be admitted. Fed. R. Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8(b)(6)). Accordingly, the Bankruptcy Rules expressly contemplate the deemed admission of allegations not specifically denied and the waiver of certain defenses not specifically pleaded when answering an involuntary petition.

For example, in a case where there are fewer than three petitioning creditors, courts have held that a debtor may waive a defense that he has twelve or more creditors if not timely raised. *See In re Mason*, 709 F.2d 1313, 1318–319 (9th Cir. 1983) (lack of requisite number of creditors

does not deprive court of jurisdiction and is treated as an affirmative defense); *In re Everett*, 178 B.R. 132, 144 (Bankr. N.D. Ohio 1994) (statutory elements not jurisdictional but must be proved or waived); *In re Kidwell*, 158 B.R. 203, 209 (Bankr. E.D. Cal. 1993) ("Failure to comply with the three-petitioner requirement is a substantive, not a jurisdictional, defense."); *In re Barth*, 109 B.R. 570, 574 (Bankr. D. Conn. 1990) (lack of petitioners not jurisdictional). Defenses concerning whether the alleged debtor is eligible to be a debtor should also be pleaded as an affirmative defense. *See In re McCloy*, 296 F.3d 370, 374 (5th Cir. 2002) ("[W]e hold that an individual's status as a farmer does not go to the jurisdiction of the bankruptcy court over an involuntary bankruptcy petition, but instead is an affirmative defense that may be waived."). Along these lines, in *Moss*, this Court held that the issue of whether the petitioning creditors hold a sufficient amount of unsecured claims can be waived where not timely raised by the alleged debtor. *Moss*, 249 B.R. at 421.

Here, the Petitioners correctly argue that Edwards did not raise the issue of whether they hold the required amount of unsecured debt at any time prior to or during the Trial. In fact, this Court raised this issue *sua sponte* after the close of the evidence at Trial. Because Edwards did not deny the Petitioners' allegation in the Involuntary Petition that they hold sufficient unsecured debt to be proper petitioning creditors, he is deemed to have admitted this averment. *See* Involuntary Petition at 2 (stating that "Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b)"). Moreover, Edwards's failure to raise this issue in his answer or in the Joint Pre-Trial Order leads this Court to conclude that he waived his right to raise it as a defense to the propriety of the filing of the Involuntary Petition.

### III.    CONCLUSION

While all other requirements for the entry of an order for relief against Edwards have been satisfied or waived, this Court concludes that the Petitioners have failed to prove, by a preponderance of the evidence, that they comprise three petitioning creditors holding three distinct claims.  As such, the Court will not direct entry of an order for relief against Edwards and this Involuntary Petition shall be, and hereby is, dismissed.

SO ORDERED.

**# # # End of Memorandum Opinion and Order # # #**